UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-23363-CIV-MOORE

FITIMA ROWE SMITH, et al.,

      Plaintiffs,

v.

CARNIVAL CORPORATION d/b/a Carnival
Cruise Lines, and FRANK'S WATERSPORTS
LTD.,

      Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

THIS CAUSE came before the Court upon Defendants' Motions to Dismiss (dkt #'s 52, 53). Responses (dkt #'s 54, 55) and Replies (dkt #'s 58, 59) were also filed.[1]

UPON CONSIDERATION of the Motions, Responses, Replies, pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

I.    BACKGROUND

Plaintiffs bring wrongful death and related claims against a cruise line and snorkel tour company for the drowning of Lois Gales during a snorkel trip excursion in the Cayman Islands. In December 2006, Gales and numerous members of her family departed from Miami, Florida, on the Carnival Cruise Line ("CCL") vessel Valor. Prior to the cruise, CCL had forwarded to Gales

---

[1] Defendants, Carnival Corporation and Frank's Water Sports, are represented by the same counsel and their individual motions to dismiss allege many of the same theories for dismissal. Consequently, while this Court examined each motion individually, the analysis herein applies to the relief requested in both motions.

promotional materials, some of which referred to a snorkeling excursion operated by Frank's Watersports Ltd. ("FWS"). Second Amended Complaint (dkt # 51) ("Compl.") ¶¶ 10-11. During the cruise, Gales and other family members attended a conference held by CCL in which various excursion options were presented to them, some of which were operated by FWS. Compl. ¶¶ 16-18. CCL materials distributed during the cruise stated that "shore excursions sold through Carnival are coordinated with reputable tour operators." Compl. ¶ 18. Also, CCL's internet website represented that the FWS excursion was safe. Compl. ¶ 19. Plaintiffs allege that, contrary to these representations, CCL did not "check out . . . or in any way insure that the operations of FWS were safe." Compl. ¶ 20.

Relying on CCL's representations as to the safety and reputableness of FWS, Gales and other family members purchased tickets for, and participated in, the FWS Fisherman's Rock Swim & Snorkel Adventure (the "excursion"). Compl. ¶ 21. They purchased the tickets on board the Valor before reaching Grand Cayman, and CCL received a portion of the ticket price. Compl. ¶ 22. The excursion apparently involved riding a motor boat to a reef and then snorkeling around the area.

On the day of the excursion, a number of operators cancelled their tours due to bad weather -- FWS, however, proceeded with its snorkel adventure. Compl. ¶¶ 24-25. The FWS crew did not provide any instructions about snorkeling or water safety, and did not warn the snorkelers about water currents in the area. Compl. ¶¶ 27, 29. When Gales and three other guests indicated that they needed life vests, the FWS crew members "incorrectly tied the life vests around [their] waists," instead of fitting them around their necks. Compl. ¶ 28. Upon entering the water, "those who had the vests tied around their waists . . . tended to sink and/or turn over and were

2

almost immediately in trouble." Compl. ¶ 30. After fellow snorkelers helped the other guests wearing life vests to stay afloat, they noticed that the current had swept Gales a significant distance away and that she was in distress. Compl. ¶ 31. When FWS crew members attempted to drive the boat to Gales to rescue her, they were unable to start the boat's motor. Compl. ¶ 32. The FWS crew was also unable to call for assistance, since the boat's radio was inoperable. Compl. ¶ 33.

Gales' daughter was able to locate her mother and bring her to the boat. Guests then assisted in trying to resuscitate Gales, but they were unsuccessful. "The crew did not assist in any attempt whatsoever to return Gales to the boat or to resuscitate her, nor did the FWS boat have any appropriate safety gear to help with the rescue and attempted resuscitation." Compl. ¶¶ 34-35.

Plaintiffs commenced the instant action against CCL and FWS on December 21, 2007 (dkt # 1). Following this Court's Order (dkt # 43) granting in part Defendants' prior Motions to Dismiss (dkt #'s 33, 34), Plaintiffs filed their Second Amended Complaint (dkt # 51). On July 31, 2008, Defendants filed the instant motions, seeking dismissal of that complaint (dkt #'s 52, 53).

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 requires that Plaintiffs' complaint contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Furthermore, the complaint should "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks omitted).

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765

(11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir. 1988). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 127 S. Ct. at 1965, and a complaint must contain enough facts to indicate the presence of the required elements. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir. 2007). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002). However, as long as the allegations rise above a speculative level, a well-pleaded complaint will survive a motion to dismiss, even if it appears "that a recovery is very remote and unlikely." Twombly, 127 S. Ct. at 1965 (internal quotation marks omitted).

### III. ANALYSIS

#### A. Jurisdiction and Choice of Law

Although both Plaintiffs and Defendants assert that the Death on the High Seas Act ("DOHSA"), 46 U.S.C. § 30301, applies to the events surrounding Lois Gales' unfortunate death, differences of opinion persist as to what implications flow from its application. Plaintiffs contend that, in addition to DOHSA claims, they are entitled to maintain actions arising under general maritime law and the laws of the Cayman Islands. Defendants, on the other hand, contend that DOHSA's applicability precludes all other claims. In order to properly address the applicability of DOHSA, general maritime law, and Cayman Islands law, the Court must first decide whether admiralty jurisdiction exists.

1. Admiralty Jurisdiction

4

Traditionally, where diversity jurisdiction existed and the parties agreed that admiralty law should apply, courts declined to probe the availability of admiralty jurisdiction. Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 899 (11th Cir. 2004) ("[G]iven that diversity jurisdiction exists and the parties' agreement that admiralty law applies, we historically have gone no further."). This approach, however, was modified following the U.S. Supreme Court's decision in Norfold Southern Railway Co. v. Kirby, 543 U.S. 14, 23 (2004). In Norfold, the Court explained that "the grant of admiralty jurisdiction and the power to make admiralty law are mutually dependent." Id. at 23. Thus, admiralty jurisdiction is a prerequisite for applying federal admiralty law. See id.

Although the Parties in this case agree that federal admiralty jurisdiction applies to their dispute, the Court "has an independent duty to ensure admiralty jurisdiction exists before applying admiralty law." Doe, 394 F.3d at 900. "[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy the conditions both of location and of connection with marine activity." Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995).

The location test simply asks "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." Id. The connection test requires both: (1) "assess[ing] the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on marine commerce," and (2) "determin[ing] whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional marine activity." Id. (internal quotation marks and citations omitted).

5

Applying the admiralty jurisdiction test to the case at hand is somewhat complicated by the fact that Plaintiffs allege multiple claims against multiple parties for conduct occurring in multiple locations. Nonetheless, based on the facts alleged, the Court has admiralty jurisdiction over Plaintiffs' claims. The location requirement is satisfied because the decedent drowned in navigable waters on a snorkeling excursion during a cruise. In addition, FWS' alleged negligence involves the conduct of snorkel tour guides while on the water, as well as the preparation and maintenance of the boat and other maritime equipment. Similarly, aside from statements contained in the materials sent to the decedent before embarking on the cruise, CCL's alleged misrepresentations about the FWS excursion were made during the cruise and on navigable waters. In addition, the decedent signed up for the excursion while on the cruise boat.

The connection test is also satisfied. Defendant CCL is a cruise line operator and thus epitomizes maritime commerce. See Doe, 394 F.3d at 900 ("[T]he cruise line industry is maritime commerce . . . ." (emphasis added)). Furthermore, Plaintiffs' claims against CCL relate directly to its cruise line operations and conduct that occurred on a cruise boat during a cruise. Similarly, Defendant FWS' snorkel trips involve the use of a boat and are closely related to marine commerce. If drowning during cruise ship snorkeling excursions "became a concern of passengers, cruise-ship business would necessarily suffer." Id. at 900.

Although some district court decisions involving scuba diving have found that admiralty jurisdiction did not exist, see, e.g., In re Kanoa, Inc., 872 F. Supp. 740, 745-46 (D. Haw. 1994); Tancredi v. Dive Makai Charters, 823 F. Supp. 778, 784-85 (D. Haw. 1993); but see McClenahan v. Paradise Cruises, Ltd., 888 F. Supp. 120, 121-23 (D. Haw. 1995) (noting that Kanoa and Tancredi were overruled at least in part by Grubart, 513 U.S. 527), this Court's

finding of admiralty jurisdiction is supported by the Eleventh Circuit's decision in <u>Schultz v. Florida Keys Diving Center, Inc.</u>, 224 F.3d 1269 (11th Cir. 2000). In <u>Schultz</u>, the court affirmed the existence of admiralty jurisdiction because "by transporting individual scuba divers from shore to dive off of a vessel, the Defendants were performing an activity traditionally performed by vessels." <u>Id.</u> at 1272.

Furthermore, the present case presents a clearer claim to admiralty jurisdiction than a recent Eleventh Circuit case involving conduct that occurred on land while a cruise boat was docked at a port-of-call. See <u>Doe</u>, 394 F.3d at 901. In upholding admiralty jurisdiction, the court noted that the stop was "an integral part of the on-going cruise or maritime activity" and that ports-of-call "not only add to the enjoyment of a cruise but form an essential function of the cruise experience. . . . Plainly, individuals choose cruise ship vacations because they want to visit unfamiliar places ashore." <u>Id.</u> Thus, the court rejected the "temptation . . . to draw a bright line between [conduct] that occurs on the ship versus in a port-of-call." <u>Id.</u>; <u>see also id.</u> at 902 ("Jane Doe was no less a cruise passenger the moment she stepped off the ship at the port-of-call than she was the moment before she stepped off the ship."). "Most importantly, the purpose behind the exercise of this Court's admiralty jurisdiction is to provide for the uniform application of general maritime law." <u>Id.</u> at 902. Therefore, if admiralty jurisdiction can encompass a land-based excursion, then it can certainly also extend to an excursion consisting of a boat trip and snorkeling.

    2. Choice of Law

Generally, when a plaintiff's claims support admiralty jurisdiction, the court will apply federal admiralty law. See <u>Doe</u>, 394 F.3d at 902 ("[T]his Court has admiralty jurisdiction over

the case . . . [c]onsequently, we apply federal admiralty law . . . ."); Everhart v. Royal Carribean Cruises Ltd., No. 07-23098, 2008 WL 717795, at *2 (S.D. Fla. March 17, 2008) ("If a claim satisfies both the maritime situs and maritime nexus tests, federal maritime law will govern the substantive issues in the case."); Tassinari v. Key West Water Tours, L.C., 480 F. Supp. 2d 1318, 1320 (S.D. Fla. 2007).

Establishing admiralty jurisdiction, however, does not foreclose the possibility of applying foreign law in place of U.S. admiralty law. When there is an issue as to whether U.S. or foreign law should apply, admiralty jurisdiction requires that the operative law be determined by applying admiralty's choice of law analysis. The Supreme Court has set out a non-exhaustive list of factors to be considered when determining which law to apply in admiralty tort cases. See Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 309 (1970); Lauritzen v. Larsen, 345 U.S. 571, 583-92 (1953). The list contains eight factors:

> (1) the place of the wrongful act; (2) the flag under which the ship sails; (3) the allegiance or domicile of the injured party; (4) the allegiance of the . . . shipowner; (5) the place of the contract . . . ; (6) the accessibility of a foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations.

Membreno v. Costa Crociere S.p.A., 425 F.3d 932, 936 (11th Cir. 2005) (stating that the eight-factor analysis "generally address[es] choice of law in maritime tort actions"); see also Szumlicz v. Norwegian Am. Line, Inc., 698 F.2d 1192, 1195 (11th Cir. 1983).

Perhaps because the Parties agree that U.S. law is at least partially applicable to this case, they have not discussed the applicable choice of law analysis. While the Parties agree that DOHSA applies, Plaintiffs argue that they may supplement DOHSA with additional claims brought under U.S. general maritime law and Cayman Islands law. Defendants argue that

8

DOHSA is an exclusive remedy and precludes the other claims. Neither Plaintiffs nor Defendants argue for the exclusive application of foreign law.

Without the benefit of discovery or briefing on the issue by the Parties, it is premature to rule on the controlling law of the case. See Wai v. Rainbow Holdings, 315 F. Supp. 2d 1261 (S.D. Fla. 2004) (concluding that, due to undeveloped record at the motion to dismiss stage, conducting the Lauritzen-Rhoditis choice of law analysis "would certainly be premature"); see also Equal Employment Opportunity Comm'n v. Kloster Cruise Ltd., 939 F.2d 920, 923-24 (11th Cir. 1991); Gazis v. John S. Latsis, Inc., 729 F. Supp. 979, 985 (S.D.N.Y. 1990); Cerda v. Eletson Mar. Corp., 515 F. Supp. 883, 887 (E.D. Pa. 1981). However, based on the alleged facts and the Parties' apparent agreement that DOHSA applies, this Court will apply U.S. law at this stage.

Regarding the applicability of foreign law, the Court also notes that a plaintiff generally may not supplement claims brought under U.S. law with foreign law claims. See In re Korean Air Lines Disaster of Sept. 1, 1983, 117 F.3d 1477, 1483-84 (D.C. Cir. 1997). Furthermore, contrary to Plaintiffs' position, 46 U.S.C. § 30306[2] does not allow Plaintiffs "to pick and choose among provisions of U.S. and [foreign] law in order to assemble the most favorable package of rights against the defendant." Korean Air, 117 F.3d at 1483-84 ("Since U.S. law, not South Korean law (or French law or Brazilian law), applies to this case, we are at a loss to understand

---

[2] Forty-six U.S.C. § 30306 provides:

When a cause of action exists under the law of a foreign country for death by wrongful act, neglect, or default on the high seas, a civil action in admiralty may be brought in a court of the United States based on the foreign cause of action, without abatement of the amount for which recovery is authorized.

9

how 'a right of action is granted by the law of' South Korea or any other foreign country. If South Korean law does not apply to a suit, it can hardly grant rights to the parties. Once the choice-of-law determination is in favor of U.S. law, only U.S. law can grant plaintiffs any sort of right of action.").

At the pleading stage, however, courts have allowed plaintiffs to allege the applicability of multiple bodies of law in the alternative. This practice has been held to satisfy Federal Rule of Civil Procedure 44.1, which requires that a party provide reasonable notice of the application of foreign law. See Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co., 426 F.3d 580, 585 (2d Cir. 2005) ("We now clarify that alternative theories may well suffice as reasonable notice when, as here, relevant events occurred in multiple foreign locations and legitimately point to several different applicable bodies of law.").

### B. Claims Under Cayman Islands Law

As the Court has not yet definitively ruled on the controlling law in this case, it is premature to dismiss Plaintiffs' claims for relief under the laws of the Cayman Islands. While the Court's previous Order Granting in Part Defendants' Motion to Dismiss (dkt # 43) discussed DOHSA and its limitations on recovery, the Order did not specifically rule, as Defendants contend, that DOSHA is "the law governing this action." FWS' Motion to Dismiss (dkt #52) ("FWS' Mot.") ¶ 4. As Defendants' request for dismissal of claims arising under Cayman Islands law is based on the assumption that this Court has already ruled on the choice of law issue, the request is denied. CCL's Motion to Dismiss (dkt # 53) ("CCL's Mot.") ¶¶ 7-8.

Defendants' assertion that claims under Cayman Islands law should be dismissed for vagueness similarly fails. FWS' Mot. ¶ 9; CCL's Mot. ¶ 9. Although the Second Amended

Complaint contains only general references to foreign law -- for example, it seeks "any recovery allowed under the laws of the Cayman Islands as may be based upon the facts as set out herein," Comp. ¶ 47 -- this also satisfies Rule 44.1's notice requirement. See id. at 585-86 ("'[T]he function of the notice is not to spell out the precise contents of foreign law but rather to inform the court and litigants that it is relevant to the lawsuit. Thus a higher degree of specificity is not required.'" (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2443 (2d ed. 1994)).

Furthermore, under the Federal Rules of Civil Procedure, a plaintiff need not provide notice in the complaint of the legal theory supporting a claim. See Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co., Inc., 192 F.3d 724, 733 (7th Cir. 1999) ("The only function the pleadings must serve is to give notice of the claim; the development of legal theories and the correlation of facts to theory come later in the process."); Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992) ("Although it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this. To the contrary, the rules discourage it. [T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal."); Berger v. Ohio Table Pad Co., 539 F. Supp.2d 1069, 1090 n.3 (N.D. Ind. 2008).

C. Claims Under U.S. Admiralty Law

The Second Amended Complaint, alleges three delineated claims: (1) misrepresentation against CCL; (2) negligence against FWS; and (3) unseaworthiness against FWS. In addition, Plaintiffs contend that they have asserted a claim against CCL and FWS for negligent infliction of emotional distress. Plaintiffs' Response to FWS' Motion to Dismiss (dkt # 55) ("Resp. to

11

FWS") 3-4; Plaintiffs' Response to CCL's Motion to Dismiss (dkt # 54) ("Resp. to CCL") 3-4. Assuming -- but not deciding -- that U.S. admiralty law applies, the Court will now address each claim and Defendants arguments for its dismissal.

### 1. DOHSA Claims

As the Court discussed in its prior Order Granting in Part Defendants' Motions to Dismiss (dkt # 43), DOHSA applies to wrongful death claims where the death was "caused by act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States." 46 U.S.C. § 30302.[3] DOSHA requires that a personal representative bring the cause of action "for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative." Id. Recovery under DOSHA is limited "to fair compensation for the pecuniary loss sustained by the individuals for whose benefit the action is brought." Id. § 30303. Non-pecuniary damages are not recoverable. See Moyer v. Klosters Rederi, 645 F. Supp. 620, 628 (S.D. Fla. 1986).

Plaintiffs' Complaint contains three wrongful death claims that fall within the bounds of DOHSA: misrepresentation, negligence, and unseaworthiness.

#### a. Misrepresentation

Plaintiffs' misrepresentation claim alleges that CCL made statements concerning the safety of FWS' snorkel excursion, that CCL "knew or should have known" the statements were

---

[3] Forty-six U.S.C. § 30302 provides:

> When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.

false, and that the decedent and others relied on those statements in deciding to take part in the FWS excursion. Compl. ¶ 50.

Although general admiralty law does not provide for a misrepresentation cause of action, a court sitting in admiralty may look to state law in certain situations. Specifically, "when neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law." Coastal Fuels Mktg., Inc. v. Fla. Express Shipping Co., 207 F.3d 1247, 1251 (11th Cir. 2000); see also Hesterly v. Royal Caribbean Cruises, Ltd., 515 F. Supp. 2d 1278, 1282 (S.D. Fla. 2007); Stires v. Carnival Corp., 243 F. Supp. 2d 1313, 1321 (M.D. Fla. 2002). On a number of occasions, courts sitting in admiralty have looked to Florida law regarding misrepresentation. See, e.g., Stires, 243 F. Supp. 2d at 1319-20; Warren v. Ajax Navigation Corp. of Monrovia, No. 91-0230-CIV-Ryskamp, 1995 WL 688421, at *6-7 (S.D. Fla. Feb. 3, 1995). Accordingly, this Court will apply Florida state law to Plaintiffs' misrepresentation claim.[4] Under Florida law, a successful misrepresentation claimant must prove the following:

> (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.

Baggett v. Electricians Local 915 Credit Union, 620 So. 2d 784, 786 (Fla. 2d DCA 1993).

Defendant CCL argues that Plaintiffs must specify whether they are claiming that CCL's misrepresentation was intentional or negligent, in order to provide them with fair notice of the

---

[4] This is subject to the above-stated assumption that U.S. law applies to this case.

13

claim. CCL's Mot. ¶ 15. This argument fails. Despite Defendant CCL's attempt to separate misrepresentation claims into two or more types based on whether the defendant acted intentionally or negligently, the components of the knowledge element are stated in the disjunctive -- "the representer <u>either</u> knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, <u>or</u> should have known the representation was false." Baggett, 620 So. 2d at 786 (emphases added). Indeed, Defendant CCL essentially conceded this point when noting that, "[w]ith respect to the second element [of an intentional misrepresentation claim], Plaintiff need only show that Defendant negligently failed to ascertain the truth or falsity of the representation." CCL's Mot. ¶ 13.[5] Therefore, Defendant CCL's request to dismiss the misrepresentation claim is denied.

### b. Negligence

Plaintiffs' negligence claim against FWS alleges eight separate actions or inactions by FWS that were negligent and caused the death of Lois Gales. Compl. ¶ 48. Plaintiffs, however, do not allege the standard of care that FWS allegedly failed to exercise. The law of this District is split as to whether failure to include the precise standard of care in a maritime negligence claim warrants dismissal. Compare Doe v. Celebrity Cruises, 145 F. Supp. 2d 1337, 1347 (S.D.

---

[5] Even if misrepresentation were to require that the defendant acted negligently regarding the truth of the representation, a claim for fraud would still apply. See Lopez-Infante v. Union Cent. Life Ins. Co., 809 So. 2d 13, 15 (Fla. 3d DCA 2002) (stating that a claim for fraud requires proving "(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation "). Furthermore, even if it were to turn out that Plaintiffs have mislabeled the legal theory of their claim, it would not be fatal. See Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co., Inc., 192 F.3d 724, 733 (7th Cir. 1999).

Fla. 2001) ("Because count II does not contain an allegation regarding the proper standard of care for a negligence action, that count is dismissed without prejudice"), with Everhart v. Royal Caribbean, No. 07-23098-CIV, 2008 WL 717795, at *2 n.1 (S.D. Fla. March 17, 2008) ("[T]his Court finds that notice pleading does not require a complaint to allege the proper standard of care provided that it notices the defendant as to the nature of the claims against him."), and id. at *3 ("Her negligence claim is not diminished simply because she fails to plead the requisite standard of care.").

This Court concludes that, under the notice pleading standard of Federal Rule of Civil Procedure 8, Plaintiffs are not required to allege the applicable standard of care in their complaint. As Defendant FWS is on notice of the general nature of Plaintiffs' negligence claim, FWS' request to dismiss that claim is denied.

c. Unseaworthiness

Plaintiffs also allege that FWS' vessel was unseaworthy and that this caused or contributed to Gales' death. Compl. ¶ 49. The warranty of seaworthiness, however, is inapplicable in this case because it only protects cargo and seamen. See Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1336 (11th Cir. 1984) (The warranty originally applied to the "carriage of cargo and was later extended to cover seamen's injuries."). The doctrine or warranty of seaworthiness does not apply to passengers. Id. Plaintiffs state that Lois Gales was a passenger on FWS' vessel. Compl. ¶ 10. Furthermore, in their Response to FWS, Plaintiffs "do not disagree that maritime law does not provide for a legal unseaworthiness claim in the sense of that allowed to seamen." Resp. to FWS 5. Accordingly, Plaintiffs' unseaworthiness claim fails and must be dismissed.

### 2. Negligent Infliction of Emotional Distress

The Second Amended Complaint states that the decedent's daughters, Fatima Rowe Smith and Henri Rowe, "were present at the drowning of their mother and saw their mother die as a direct and proximate result of the [conduct] of CCL and FWS as described herein." Compl. ¶ 43. Plaintiffs indicate in their Responses that this paragraph is meant to state a claim for negligent infliction of emotional distress on behalf of Gales' daughters against FWS and CCL. Resp. to FWS 3-4; Resp. to CCL 3-4. This claim is confusing, however, because it appears in the fact section of the Second Amended Complaint and is not separately delineated or set-off in bold like Plaintiffs' three other claims. Furthermore, the paragraph is, on its face, a factual statement and does not make any claim or demand.

Assuming the paragraph is sufficiently clear to state a claim, the Court notes that the claim would not be precluded by DOHSA. The Supreme Court has ruled that, where DOHSA is applicable -- i.e., for wrongful deaths occurring more than three nautical miles from U.S. shoreline -- the statute "announces Congress' considered judgment on such issues as the beneficiaries, the limitations period, contributory negligence, survival, and damages." Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625. Accordingly, when DOHSA applies, parties are precluded from undermining its purpose by bringing supplemental general maritime claims for wrongful death or survival, or by seeking recovery for non-pecuniary damages (such as pre-death pain and suffering). See id. ("Congress did not limit DOHSA beneficiaries to recovery of their pecuniary losses in order to encourage the creation of nonpecuniary supplements."). Although Defendant FWS contends that DOHSA similarly precludes Plaintiffs' emotional distress claim, the Supreme Court has clarified that it "did not address the availability of other causes of action."

16

Dooley v. Korean Air Lines Co., Ltd., 524 U.S. 116, 122-23 (1998).

The present claim is brought by Fatima Rowe Smith and Henri Rowe, seeking recovery for emotional distress that they suffered personally. They are not seeking recovery for their mother's death or her pre-death pain and suffering -- only for the emotional distress that has resulted from witnessing it. Indeed, the fact that a death occurred is not essential to their claim. This claim does not fall within DOHSA's ambit, and thus can hardly be said to represent "Congress' considered judgment" on the issue. Higginbotham, 436 U.S. at 625. Therefore, because the emotional distress claim is not precluded by DOHSA, the Court rejects Defendants' request to dismiss that claim and to dismiss Smith and Rowe, as Plaintiffs in their individual capacities.

Although Plaintiffs' claim for negligent infliction of emotional distress is not precluded by DOHSA, the Second Amended Complaint fails to allege facts sufficient to support it. There are a variety of limiting tests for assessing claims of negligent infliction of emotional distress. The three predominant limiting tests are (1) the physical impact test, (2) the zone of danger test, and (3) the relative bystander test. See Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 546-49 (1994). While Plaintiffs' allegations may satisfy the relative bystander test, admiralty law allows recovery only for those passing the zone of danger test.

In Gottshall, the Supreme Court adopted the zone of danger test for claims brought under the Federal Employers' Liability Act ("FELA"). Id. at 554 ("We agree that the zone of danger test best reconciles the concerns of the common law with the principles underlying our FELA jurisprudence."). "[T]he zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are

17

placed in immediate risk of physical harm by that conduct." Id. at 547-48. In other words, "those within the zone of danger can recover for fright, and those outside of it cannot." Id. at 548 (internal quotation marks omitted).

In selecting the zone of danger test, the Court rejected the two other tests. The physical impact test, which requires that the plaintiff "contemporaneously sustained a physical impact (no matter how slight) or injury," had already been mostly abandoned and was only still recognized in five states. Id. at 547. The relative bystander test considers three factors bearing on reasonable foreseeability:

> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident . . . . (3) Whether plaintiff and the victim were closely related . . . .

Id. at 548 (internal quotation marks omitted). As of 1994, "nearly half the States . . . allow[ed] bystanders outside the zone of danger to obtain recovery" under this test. Id. at 549. Despite the popularity of the relative bystander test, however, the Court held that it was "an inappropriate rule in the FELA context." Id. at 556. In particular, the Court noted that "[o]nly railroad employees (and their estates) may bring FELA claims . . . and presumably it would be a rare occurrence for a worker to witness during the course of his employment the injury or death or a close family member." Id. at 556.

Although, in Gottshall, the Court was discussing negligent infliction of emotional distress in the context of FELA, its adoption of the zone of danger test has been incorporated into admiralty law. See Tassinari v. Key West Water Tours, L.C., 480 F. Supp. 2d 1318, 1320-21 (S.D. Fla. 2007) ("[C]ourts have analogized the remedial nature of FELA to maritime law and

have used the same zone of danger test and similar reasoning to evaluate negligent infliction of emotional distress claims under general maritime law."); Williams v. Carnival Cruise Lines, Inc., 907 F. Supp. 403, 405 (S.D. Fla. 1995) (explaining "the Jones Act fully incorporates [FELA] by reference" and that courts "look to case law developed under the Jones Act in guiding the development of the general maritime law"). As a result, courts applying admiralty law often employ the zone of danger test. See, e.g., Tassinari, 480 F. Supp. 2d at 1320 ("Claims of negligent infliction of emotional distress under maritime law of the United States must survive the zone of danger test."); White v. NCL America, Inc., No. 05-22030-CIV-BROWN, 2007 WL 414331, at *2 (S.D. Fla. Feb. 6, 2007) ("Because Plaintiff's complaint alleges that she was physically injured by Defendants' negligence and that she suffered emotional distress, she falls within the 'zone of danger.'"); Hutton v. Norwegian Cruise Line Ltd., 144 F. Supp. 2d 1325, 1327-28 (S.D. Fla. 2001); Williams, 907 F. Supp. at 405-06; Pullman v. Bouchard Transp. Co., No. Civ.A.99-3008, 2000 WL 1818503, at *3 (E.D. La. Dec. 12, 2000) (reasoning, in admiralty case, that "[a]s the zone of danger is the proper framework . . . the inquiry is whether plaintiff was threatened with imminent physical impact").

While the Gottshall Court's reasons for rejecting recovery for relative bystanders -- inconsistency with FELA statutory interpretation and unlikeliness to occur in railroad worker context-- may appear inapplicable in the maritime context, the importance of fostering uniformity in admiralty law weighs strongly against changing the status quo. Cf. Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 210 n.8 ("The federal cast of admiralty law, we have observed, means that state law must yield to the needs of a uniform federal maritime law when this Court finds inroads on a harmonious system . . . ." (internal quotation marks omitted)); Doe v. Celebrity

Cruises, Inc., 394 F.3d 891, 902 (11th Cir. 2004) ("Most importantly, the purpose behind the exercise of this Court's admiralty jurisdiction is to provide for the uniform application of general maritime law."). Accordingly, in light of the widespread adoption of the zone of danger test by courts sitting in admiralty, this Court must reject Plaintiffs' argument that this claim is governed by Florida law, which would allow recovery for relative bystanders. To the extent the Second Amended Complaint states a claim for negligent infliction of emotional distress under U.S. general maritime law, that claim is dismissed because Plaintiffs have not alleged any facts indicating that Gales' daughters were in the zone of danger.

### IV.  CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendants' Motions to Dismiss are GRANTED IN PART AND DENIED IN PART. Plaintiffs' claim for unseaworthiness is DISMISSED WITH PREJUDICE. Plaintiffs' claim for negligent infliction of emotional distress is DISMISSED WITHOUT PREJUDICE. Plaintiffs are granted leave to file, within fourteen (14) days of the date of this Order, a Third Amended Complaint, for the sole purpose of amending their claim for negligent infliction of emotional distress. Any other amendment requires prior leave of the Court. Defendants' Motions to Dismiss are DENIED in all other respects.

DONE AND ORDERED in Chambers at Miami, Florida, this 27th day of October, 2008.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:  All Counsel of Record